IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARSHALL CHARLES RICHMOND, | No. 3:21-cv-00866-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| MICHAEL REESE, MULTNOMAH COUNTY SHERIFF, STEVEN ALEXANDER, and KURTISS MORRISON, | |
| Defendants. | |

Marshall Charles Richmond
6947889
Snake River Correctional Institution
777 Stanton Blvd
Ontario, OR 97914-8335

    Plaintiff, *Pro Se*

Christopher A. Gilmore
Senior Assistant County Attorney
Multnomah County Attorney's Office
501 S.E. Hawthorne, Ste 500
Suite 500
Portland, OR 97214

    Attorneys for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

This matter comes before the Court on Plaintiff's Motion to Disqualify, ECF 33, and Defendants' Motion for Summary Judgment, ECF 28. For the reasons that follow, the Court denies Plaintiff's Motion and grants Defendants' Motion.

## BACKGROUND

On October 19, 2020, Plaintiff Marshall Charles Richmond was booked into the Multnomah County Jail at Inverness ("Inverness") as a pretrial detainee. Pedro Decl., ECF 31, Ex. 3 at 1. On January 28, 2021, Plaintiff was required to appear in the Multnomah County Circuit Court at 2:00 pm for a hearing. Gilmore Decl., ECF 29, Ex. 6 at 1. On the morning of January 28, 2021, Plaintiff and two other adults in custody ("AIC")[1] were escorted from Dorm 12 to a holding cell with other AICs then placed in a transport bus that was "sectioned off" with "six people" on one side and several other AICs on the other side. Gilmore Decl., Ex. 2 (Plaintiff's Depo.), at 14, 16-17. Plaintiff and "the majority of the people" on the bus were held in one cell at the courthouse while waiting for proceedings. *Id.*, at 17. Plaintiff appeared for his hearing at 2:00 p.m. and then returned to a holding cell with at least one other person. "[S]omewhere around" 4:00 p.m. Plaintiff was transported back to Inverness. *Id.* at 8.

AIC A tested positive for COVID-19 at 5:58 p.m. on January 28, 2021. McCall Decl., ECF 30, Ex. 3 at 1. AIC B tested positive for COVID-19 at 5:54 p.m. on January 28, 2021. McCall Decl., Ex. 4 at 1. Pursuant to policy, all of Dorm 12 was tested for COVID-19, individuals who tested positive remained in Dorm 12, and Dorm 12 was placed on medical lockdown. *Id.*, Ex. 2 at 9, Ex. 7, Ex. 8. AICs who tested negative, but who were exposed moved

---

[1] Defendants refer to these inmates as AIC A and B for privacy reasons. Defs.' Mot. at 6.

to Dorm 13 *Id.*, Ex. 7. Because Plaintiff tested negative, but had been exposed, he was moved from Dorm 12 to Dorm 13. *Id.* Dorm 13 was also placed on medical lock down, which required, among other things, staff masking, monitoring AICs for symptoms, and daily testing for 14 days. McCall Decl. ¶ 9; Ex. 5 at 27; Gilmore Decl., Ex. 2 at 25, 29. On February 8, 2021, Plaintiff tested positive for COVID-19. Gilmore Decl., Ex. 7 at 4. Plaintiff remained in Dorm 13, was monitored daily, and received care. Gilmore Decl., Ex. 2 at 25, 29.

On February 15, 2021, Plaintiff was seen by Jacob Metcalf, RN, who reported Plaintiff had "easy and regular" respiration. Gilmore Decl., Ex. 7 at 2. Plaintiff was seen by Jami Wheeler, RN, and "report[ed] no symptoms during symptoms screening, was not wearing a mask." *Id.*

Plaintiff testified at deposition that he filed a grievance "about protecting [him] from this COVID and . . . why [he] was in here and then why was [he] put into a holding cell and then took to another unit." Gilmore Decl., Ex. 2 at 20-21. Plaintiff, however, did not receive a response and did not file and appeal or another grievance. *Id*. at 21. Plaintiff stated "[i]f they don't answer [a grievance] . . . you can proceed with the next step. That's what the . . . rules say because you take it as being a denied claim." *Id*. Plaintiff also stated he understood how to file a grievance from his prior incarcerations at Inverness. *Id.* at 30. Plaintiff testified that he did not appeal the nonresponse of his grievance to the next supervisory level and instead he filed a tort claims notice. *Id.* at 32-33.

On February 4, 2021, the Multnomah County Attorney's Office received Plaintiff's Tort Claim Notice dated January 30, 2021, in which Plaintiff stated the "date of loss" was "1-28-21" and he was seeking damages of $2,000,000. Gilmore Decl., Ex. 1. Plaintiff noted the following circumstances of his claim:

3 – OPINION & ORDER

> Went to court at 5:00 AM was sitting in holding cell until transported to new court house and was put in PM holding cell with two other people that was from dorm 12 was put on protocol meaning that the two people that went to court could have been infected which could have infected me. When I return to MCIJ I had went back to dorm 11 and was there for no more than an hour and half [*sic*] when I was told to report to processing and was put in cell 6 for at least 45 minutes then was told I was moving to dorm 5 which a person was tested positive for covid-19 in bunk 5. And they put me in bunk 2. Dorm 5 is designated for protocol to be watched and tested every five days.

*Id*.

On June 8, 2021, Plaintiff filed a *pro se* Complaint in this Court against then Multnomah County Sheriff Michael Reese, Chief Deputy of Corrections for the Multnomah County Sheriff's Office Steven Alexander, and Facility Commander for the Multnomah County Sheriff's Office Kurtiss Morrison asserting claims under 42 U.S.C. § 1983 for violation of his Eighth and Fourteenth Amendment rights; a claim under *Monell v. New York Department of Social Services,* 436 U.S. 658 (1978); and a claim for negligence.[2]

On August 19, 2021, Defendants filed an Answer in which they asserted a number of affirmative defenses including failure to exhaust administrative remedies.

On December 18, 2023, Defendants filed a Motion for Summary Judgment as to all claims. On December 21, 2023, Plaintiff was provided with a Summary Judgment Advice Notice. On January 16, 2024, Plaintiff filed a Response to Defendants' Motion and a Motion to Disqualify. The Court took both Motions under advisement on February 13, 2024.

---

[2] Plaintiff states in his Complaint that his *Monell* and negligence claims are asserted only against "the County," but Multnomah County is not a named defendant here.

4 – OPINION & ORDER

**PLAINTIFF'S MOTION TO DISQUALIFY**

Plaintiff moves to disqualify this Court from presiding in the current matter on the grounds that he "do[es] not believe that [he] can have a fair and impartial trial or other hearing before the Honorable Marco A. Hernandez." Pl. Mot., ECF 33 at 2.

Plaintiff has not established that an objective third-party observer would perceive that this Court is influenced by bias, and there is no reasonable basis to question this Court's impartiality. *See* 28 U.S.C. § 455(a)("Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997)(holding the standard for recusal is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned"). Accordingly, Plaintiff's Motion to Disqualify is denied.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants move for summary judgment as to all of Plaintiff's claims on the grounds that (1) Plaintiff did not exhaust his administrative remedies, (2) Plaintiff fails to establish the elements of his constitutional claims, (3) Plaintiff fails to establish a pattern and practice of violations that was the cause of Plaintiff's injury as required under *Monell,* (4) Defendants are entitled to discretionary immunity for Plaintiff's negligence claim, and (5) Plaintiff has not established a negligence claim.

**I.      Standards**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     Failure to Exhaust

Defendants assert they are entitled to summary judgment on Plaintiff's federal claims because he did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

### A.  Standard

The PLRA provides "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA "mandates that an inmate exhaust . . . administrative remedies . . . before bringing suit to challenge prison conditions" unless a remedy is unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016)(quotation omitted). A remedy is unavailable when: (1) the procedure "operates as a simple dead end" because the "relevant administrative procedure lacks authority to provide any relief" or "administrative officials have apparent authority, but decline ever to exercise it"; (2) the "administrative scheme [is] so opaque that . . . no reasonable prisoner can use" it; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has made clear that courts "may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 136 S. Ct. at 1856. Prisoners must navigate the prison's administrative-review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Booth v. Churner*, 532 U.S. 731, 739-41 (2001).

An inmate's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(e) is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "[D]efendants must produce evidence proving failure to exhaust in order to carry their burden." *Albino v. Baca*, 747

7 – OPINION & ORDER

F.3d 1162, 1166 (9th Cir. 2014). "Relevant evidence . . . would include . . . regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case." *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005). If the court concludes an inmate has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

  **B.**  **Analysis**

    The Multnomah County Corrections Inmate Manual in place in January 2021 contains the following relevant information about filing grievances:

> You may file a grievance about a jail policy, practice, rule, or condition that directly affects you if you think it is illegal or poses a hazard. You must first attempt to resolve a grievance informally with the employee it concerns. If this is unsuccessful you may obtain a grievance form from your housing unit deputy during walk time.
>
>           * * *
>
> Your grievance about an issue will not be considered fully exhausted unless you have properly and timely filed an appeal at every available grievance level.
>
>           * * *
>
> If you are not satisfied with the resolution of your grievance you may submit it to the next supervisory level by submitting a new grievance form within 5 days of receiving the response.

Pedro Decl., ECF 31, Ex. 5 at 1-2. Under these grievance procedures an inmate must pursue an appeal of a denial to exhaust administrative remedies. *See, e.g.*, *Allen v. Platas*, No. 3:22-CV-01105-CL, 2023 WL 9197892, at *2 (D. Or. Dec. 20, 2023), report and recommendation adopted, No. 3:22-CV-1105-CL, 2024 WL 125392 (D. Or. Jan. 11, 2024)(finding the plaintiff

8 – OPINION & ORDER

failed to exhaust administrative remedies when he did not appeal any of his grievances submitted while he was in Multnomah County Jail).

Defendants assert Plaintiff did not file an initial grievance, and even if he did, he failed to fully exhaust the administrative process. Sheriff's Deputy Brandon Pedro testifies in his Declaration that he searched the Multnomah County jail grievance database and it reflected that Plaintiff did not file a grievance related to COVID-19. Pedro Decl. ¶ 8, Ex. 7. Plaintiff, however, testified at deposition that he filed a grievance. Plaintiff also produced a signed Affidavit of another inmate stating Plaintiff "has filed numerous grievances pertaining to contacting the coronavirus in February of 2020 [*sic*]" and he "witnessed [Plaintiff] write out and submit grievances in the Inverness Jail mail box." Pl. Resp. at 45. Although this evidence creates an dispute of fact as to whether Plaintiff submitted an initial grievance, the dispute is not material because Plaintiff concedes he did not proceed to the second level of the administrative process. As noted, the Inmate Manual provides that if an inmate is not satisfied with the resolution of his grievance he "may submit it to the next supervisory level by submitting a new grievance form" and an inmate's "grievance about an issue will not be considered fully exhausted unless [he has] properly and timely filed an appeal at every available grievance level." Plaintiff testified at deposition that he was aware of the policy that if an inmate did not receive a response to his grievance, "your grievance is denied." Gilmore Decl., Ex. 2 at 21, 32. Plaintiff also testified that he was familiar with the grievance policy and requirements. *Id*. at 30. Finally, Plaintiff testified that he did not submit an appeal of the denial of his grievance. *Id*. at 32. The record, therefore, reflects Plaintiff failed to exhaust his administrative remedies.

In his Response Plaintiff asserts, relying on *Maney v. Brown*, that COVID-19 rendered the grievance procedures unavailable and, therefore, he did not have to exhaust the

9 – OPINION & ORDER

administrative process. In *Maney* Magistrate Judge Stacie Beckerman noted that "federal courts are split on the issue of whether an AIC must exhaust administrative remedies before filing suits" related to COVID-19. 464 F. Supp. 3d 1191, 1205 (D. Or. 2020). Judge Beckerman noted the Supreme Court's decision in *Valentine v. Collier*, 140 S. Ct. 1598 (2020) "reinforces the reasoning of [some] district courts . . . that COVID-19 does not automatically render a prison's grievance system unavailable, therefore exempting a plaintiff from the PLRA exhaustion requirement." *Id.* at 1206. Judge Beckerman concluded, however, that the plaintiffs in *Maney* "demonstrated that ODOC's[3] grievance process [was] currently unavailable to grieve the systemic COVID-19 issues that Plaintiffs challenge[d] in th[at] case" because the defendants "acknowledge[d] that ODOC [was] not accepting grievances relating to COVID-19 emergency operations, nor "general grievances regarding social distancing, isolation, and quarantine of other AICs, or modified operations such as the visiting shutdown" because doing so [was] 'inconsistent with ODOC's rules.'" *Id.* at 1207.

   There is no evidence here that Inverness stopped taking or processing grievances relating to COVID-19 or "social distancing, isolation, and quarantine of other AICs, or modified operations such as the visiting shutdown" at the time Plaintiff alleges he filed his grievance. Plaintiff, therefore, has not established that the grievance procedure was "unavailable" and that he did not have to exhaust the grievance procedure. The Court concludes Defendants have established that Plaintiff did not exhaust his administrative remedies. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claims under § 1983 for violation of his Eighth and Fourteenth Amendment rights and under *Monell*. *See Robles v. Cnty. of Los Angeles,* No. CV189401DMGPLAX, 2019 WL 8917765, at *8 (C.D. Cal. Oct. 28, 2019)

---

[3] Oregon Department of Corrections

(dismissing Plaintiff's § 1983 constitutional claims and *Monell* claim for failure to exhaust administrative remedies).[4]

### III. Negligence

Defendants move for summary judgment on Plaintiff's negligence claim on the grounds of discretionary immunity and failure to establish a negligence claim.

#### A. Standard

"To prevail on a negligence claim under Oregon law, the plaintiff must show 'the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff.'" *Thomas v. Deschutes Cnty.*, No. 6:19-CV-01781-AA, 2022 WL 2704176, at *5 (D. Or. July 12, 2022) (quoting *Chapman v. Mayfield*, 358 Or. 196, 205 (2015)(en banc)). In Oregon, "the traditional duty-breach analysis 'is subsumed in the concept of general foreseeability, 'unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty.'" *Id.* (quoting *Chapman*, 358 Or. at 205). "The relationship between jailer and inmate is such a relationship." *Id.* (citing *Nordenstrom v. Corizon Health, Inc.*, No. 3:18-cv-01754-HZ, 2021 WL 2546275, at *20 (D. Or. June 18, 2021)). "'Deputies must care for the prisoners in their custody and generally protect them from harm,' and in practical terms, this translates into a county's 'duty to comply with its own policies, relevant licensing standards, and the general standard of care for its industry.'" *Id.* (quoting *Hanington v. Multnomah Cnty.*, No. 6:19-cv-01781-AA, 2022 WL 861266, at *14 (D. Or. 2022)(internal quotation marks and citation omitted)).

---

[4] Because the Court concludes Plaintiff did not exhaust his administrative remedies the Court does not address Defendants' other bases to dismiss Plaintiff's federal claims.

11 – OPINION & ORDER

**B.     Plaintiff's Claim**

The bases of Plaintiff's negligence claim are somewhat unclear. Plaintiff's Tort Claim Notice described the events surrounding Plaintiff's court appearance, transportation with an individual or individuals who later tested positive for COVID-19, and his transfers between dorms at Inverness. In the "Statement of Claims" section of Plaintiff's Complaint Plaintiff lists negligence as his third claim and states, "see attached statement." Attached to his Complaint is an Inmate Questionnaire titled "COVID-19 CLAIMS" "LEGAL MAIL - CONFIDENTIAL" that asked AICs to "[p]rovide any other information related to the jail's failure to take precautions to protect you from COVID." Compl. at 6. Plaintiff noted:

> First, the jail had mixed positive inmate [*sic*] with each other while transporting inmates to court then placing all inmates in the same holding cell while waiting for court. Then placed me with a positive inmate while waiting to return to the Inverness jail. When transporting back to the jail I was handcuffed with the infected person that had covid-19. When we was back at the jail went [*sic*] back to my original unit . . . and was called back to processing and was put in a cell for 1 hour then was moved to unit 5 with the same person that had covid-19 then I was moved to dorm 13 where everyone had covid-19.

*Id.* Plaintiff also attached 16 pages of a complaint filed in a putative class action[5] relating to Inverness's COVID-19 policies and procedures. The putative class action complaint attached by Plaintiff includes a negligence claim against Multnomah County asserting it was negligent by:

    a.    failing to require adequate social distancing;

    b.    failing to require AICs, staff, or agents to wear masks or other PPE;

    c.    failing to quarantine COVID-infected AICs from uninfected AICs;

    d.    placing AICs that were symptomatic or who had tested positive with COVID in confined spaces, such as cells, workspaces, and

---

[5] Plaintiff told the Court at a telephone conference on August 22, 2023 that he advised class counsel in the putative class action that he wants to opt out of the class action.

|   |   |   |
|---|---|---|
|   |   | transportation vehicles, with AICs that had not been infected with COVID-19; |
|   | e. | requiring AICs that were housed in quarantine units (with COVID-19 positive AICs) to work, eat, serve food, and otherwise interact in person with AICs from nonquarantine units; |
|   | f. | failing to quarantine AICs with COVID symptoms or awaiting testing or test results from uninfected AICs; |
|   | g. | allowing corrections staff with known COVID-19 symptoms to work in the institutions; |
|   | h. | failing to properly sanitize and disinfect facilities, equipment, and commonly touched surfaces such as telephones, tablets, and door handles; |
|   | i. | failing to screen or take necessary steps to prevent employees or other people that were symptomatic or had been exposed to COVID from entering a facility; |
|   | j. | failing to test symptomatic AICS; |
|   | k. | failing to contact trace to identify people who were exposed to AICS or staff that tested positive; |
|   | l. | failing to test people who were exposed to AICS or staff that tested positive; and |
|   | m. | failing to screen or test AIC transfers, employees, and other people entering a facility for symptoms or exposure. |

Compl. at 20-21, ¶ 93.

At deposition Plaintiff testified that his action is related only to the events that Plaintiff set out in his Tort Claim Notice and reiterated in the statement on page six of his Complaint. Gilmore Decl., Ex. 2 at 18. Plaintiff stated he borrowed the pages from the putative class action complaint because he thought they contained "pertinent information," but reiterated his claims were not based on anything other than what was in his Tort Claims Notice. *Id*. at 26. Nevertheless, in his Response to Defendants' Motion for Summary Judgment Plaintiff states:

13 – OPINION & ORDER

"There is no dispute that [COVID-19] presents a sufficiently substantial risk of harm to AIC's [*sic*] and it should have come as no surprise to Defendants that they have a duty to protect AIC's [*sic*] from exposure to Covid-19." Resp., ECF 35, at 15. Plaintiff then lists the same allegations set out in ¶ 93 of his Complaint. The Court, therefore, evaluates Plaintiff's negligence claim including the specific factual allegations on page six as well as the putative class action allegations found in ¶ 93.

### C. General Allegations

The class action claim portion of Plaintiff's negligence claim contains broad factual allegations relating to unspecified AICs and events that are not alleged to have involved Plaintiff. The only factual allegations specific to Plaintiff are those set out at page six of the Complaint. Even viewing the factual allegations at page six in the light most favorable to Plaintiff, they do not support the portions of the negligence claim alleged at ¶ 93(b), (e), (g)-(i), (k), or (m). In addition, in support of their Motion for Summary Judgment Defendants produced the Multnomah County Infection Control Plan from November 2020; the relevant quarantine status notes; the relevant notes of Michael Seale, M.D., who tracked the identification and response to COVID-19 within the Multnomah County Jail system; and the Dorm 12 medical lockdown order that together establish Inverness implemented a COVID-19 response plan that included requirements for social distancing, wearing of masks and PPE, quarantining positive and exposed inmates, sanitizing, screening employees and others for COVID or exposure to COVID, and so on. *See* McCall Decl., Exs. 1-2, 5-6; Pedro Decl. Ex. 8. For example, the Dorm 12 medical lockdown order prohibited inmates from moving into or out of Dorm 12 without prior approval of the Facility Commander, required inmates leaving Dorm 12 to wear masks, directed staff to encourage social distancing and good hygiene practices, required high touch

areas to be disinfected, and required staff to wear masks and PPE when in Dorm 12. Pedro Decl., Ex. 8. In addition, Defendants produced the Declaration of Sara McCall, Communicable Disease Nurse Manager working in the Public Health Division of the Health Department for Multnomah County, in which she testifies:

> The Multnomah County Health Department developed best practices during the COVID pandemic by coordinating with [the] Tri-County Health Officer, the Emergency Operations Center, the Department of County Health, and the Multnomah County Sheriff's Office[, including] weekly meetings to develop policies on how to prevent the spread of COVID-19 and to provide appropriate medical care.

McCall Decl., ¶ 5. McCall notes she reviewed the relevant medical records, the Infection Control Plan, status reports from Dr. Seale, information about dorm lock downs, the Interim Guidance and Management of Coronavirus Disease 2019 COVID-19 in Correctional and Detention Facilities, and Considerations for Modifying COVID-19 Prevention Measures in Correctional and Detention Facilities. *Id.* ¶¶ 6-8. McCall testifies that from her review of the evidence and "with a reasonable degree of certainty within my profession . . . jail and medical staff followed the policies and practices in place at the time of the incident on January 28, 2021 and that those policies and practices were reasonable and consistent with managing the spread of COVID-19." *Id.* ¶ 9. McCall testifies that protocol at the time of Plaintiff's transport to court and contraction of COVID-19 "considered the guidelines provided for the Center for Disease Control regarding management of COVID-19 in a correctional setting as well as the individual facilities physical space, staffing, population, operations, and other resources and conditions within the Multnomah County jails." *Id.* ¶ 9(f).

    Plaintiff received a summary judgment advice in notice in which he was directed to Federal Rules of Civil Procedure 56 and advised that to survive summary judgment

15 – OPINION & ORDER

> you cannot simply rely on what your complaint says. Instead, you must set out specific facts in depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine dispute of material fact for trial.

Summ. J. Advice Notice, ECF 32. In his Response to Defendants' Motion, however, Plaintiff does not provide evidence to support any of the class action negligence allegations at ¶ 93(b), (e), (g)-(i), (k), and (m) or to contradict Defendants' summary judgment materials. Plaintiff simply restates the allegations contained at ¶ 93 of his Complaint. This is insufficient to rebut Defendants' evidence or to establish a genuine dispute of material fact exists as to the class action allegations of negligence asserted in ¶ 93(b), (e), (g)-(i), (k), and (m). The Court, therefore, grants Defendants' Motion for Summary Judgment as to that portion of Plaintiff's negligence claim based on allegations contained at ¶ 93(b), (e), (g)-(i), (k), and (m) of his Complaint.

    **C.    Specific Allegations**

The specific allegations made by Plaintiff in the Complaint are that he was transported to and from Multnomah County Circuit Court with an individual or individuals who had COVID-19 and while at the courthouse, he was put in a holding cell with one or more of those individuals. Plaintiff also objects to being placed in a housing unit with one or more of the individuals who had COVID-19 and then being moved to Dorm 13 "where everyone had covid-19." As a result of these actions, Plaintiff alleges he contracted COVID-19. These allegations may also implicate the class action allegations at ¶ 93(a), (c)-(d), (f), (h), (j) and (l).

    Defendants produced evidence establishing that there was no indication that the individuals with whom Plaintiff was transported to and from court and with whom he was placed in the holding cell had COVID-19 before they returned from court. Plaintiff testified at

deposition that he returned to Inverness around 4:00 p.m. and the record reflects AIC A tested positive for COVID-19 at 5:58 p.m. and AIC B tested positive for COVID-19 at 5:54 p.m. Plaintiff does not point to any evidence that AIC A or B were visibly sick or showing symptoms of COVID-19 at the time of their interactions with Plaintiff or that Defendants had any reason to believe AIC A or B had COVID-19 at the time they interacted with Plaintiff. Plaintiff, therefore, fails to establish that a material dispute of fact exists as to whether Defendants' conduct in transporting and holding Plaintiff with AIC A an/or B was unreasonable or that there was a foreseeable risk of harm to Plaintiff in transporting him with AIC A or B.

The record also reflects that after AIC A and B tested positive for COVID-19, Defendants tested all individuals in Dorm 12 and individuals who had been in contact with them, including Plaintiff, for COVID-19. Defendants instituted reasonable protocols for quarantining individuals who tested positive at that time in Dorm 12; quarantining individuals who had been exposed, but who had not tested positive in Dorm 13; and medically locking down both dorms. Plaintiff does not point to any evidence that establishes a material dispute of fact exists as to whether Defendants' quarantine protocol was unreasonable or likely to lead to a foreseeable risk of harm to Plaintiff. The Court, therefore, concludes Plaintiff has not established a material dispute of fact exists as to the rest of Plaintiff's negligence claim including his specific allegations found at page six of his Complaint and the class action allegations found in ¶ 93(a), (c)-(d), (f), (h), (j) and (l) of his Complaint. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's negligence claim.[6]

---

[6] Because the Court concludes Plaintiff has not established a material dispute of fact exists as to his negligence claim, the Court does not address Defendants' discretionary immunity argument.

17 – OPINION & ORDER

## IV.   Injunctive Relief

Although Plaintiff requested only damages in his Tort Claim Notice, in the portion of his Complaint taken from the putative class action Plaintiff also requests injunctive relief "requiring that Defendants":

   a.   mandate adequate social distancing can be accomplished to prevent the spread of the virus;

   b.   institute a safety plan to prevent additional COVID-19 outbreaks;

   c.   allow readily available and reasonable access to disinfecting solutions for the purpose of cleaning and disinfecting frequently touched objects, cells, common areas, dormitories, laundry, and eating areas;

   d.   provide regular COVID-19 testing for all AICs

   e.   waive all medical co-pays for those experiencing coronavirus-like `symptoms;

   f.   waive all charges for medical grievances during this health crisis;

   g.   enjoin Defendants and their agents from retaliating against adults-in-custody for reporting symptoms, or seeking redress either administratively or from the Court;

   h.   provide single-cell quarantine of persons who have come into contact with persons known to have coronavirus, isolation with proper medical checks for those who are experiencing coronavirus-like symptoms, and safe housing for Class Members as appropriate and without incorporating disciplinary characteristics to those preventive housing moves; and

   i.   any other remedy the Court sees just and fit to address the constitutional violations outlined above.

Compl. pp. 22-23, ¶ 101. Plaintiff, however, was transferred to Coffee Creek Correctional

Facility in December 2021 and to Snake River Correctional Institution in February 2022.[7] Defendants, therefore, assert Plaintiff's claim for injunctive relief is moot.

> [When] an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim. Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted. And the [released] inmate has no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place.

*Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012)(quotation omitted). In *Alvarez* the Ninth Circuit rejected the plaintiff's argument that his claims for injunctive relief were not moot because "his claims challenge ongoing prison policies to which other inmates will remain subject." *Id*. The Ninth Circuit noted that although it had recognized an exception to the mootness doctrine in *United States v. Howard*, 480 F.3d 1005 (9th Cir. 2007), it had "never applied [it] beyond . . . circumstances involving short-lived pretrial proceedings in criminal prosecutions. . . ." *Id.* at 1065. The court noted that "even if *Howard* appl[ied] more broadly, it would not apply . . . to Alvarez's . . . claims challenging prison policies affecting the conditions of his . . . incarceration [because] . . . current ODOC inmates . . . can bring their own . . . claims challenging those policies[,] litigate [those] . . . claims to completion, [or] do so as a class action[.]" *Id.* The court, therefore, concluded the plaintiff's claims for injunctive and declaratory relief were moot and that the district court did not err when it dismissed those claims.

Plaintiff is not longer in Multnomah County custody, and, therefore, he is "free of the policy or practice that provoked his [claims for injunctive relief] in the first place." As in *Alvarez*, even if some policies or procedures about which Plaintiff complains are those to which

---

[7] Coffee Creek and Snake River are both Oregon Department of Corrections facilities.

19 – OPINION & ORDER

other Multnomah County AICs may "continue to be subject[ed]," those AICs can, and in fact have, brought their own actions challenging those policies. The Court, therefore, denies Plaintiff's claim for injunctive relief as moot.

## CONCLUSION

The Court DENIES Plaintiff's Motion to Disqualify, ECF 33, and GRANTS Defendants' Motion for Summary Judgment, ECF 28.

IT IS SO ORDERED.

DATED:_____March 17, 2024_____.

                                                _____
                                                MARCO A. HERNÁNDEZ
                                                United States District Judge